FEDERAL DEPOSIT INSURANCE CORPORATION, RESPOND-
ENT, v. BEAKLEY CORPORATION, IMPLEADED, ETC.,
APPELLANT.

Submitted February 16, 1940—Decided April 25, 1940.

For the appellant, *Joseph Beck Tyler.*

For the respondent, *Vincent L. Gallaher.*

The opinion of the court was delivered by

PARKER, J. The disposition of this appeal is within a very narrow compass. There are only two grounds of appeal alleging error in any action of the trial court: first, that the court refused to nonsuit plaintiff; and secondly, refusal to direct a verdict for defendant-appellant. Only the first is argued. No question is raised with regard to rulings on evidence or as respects the judge's charge.

The action was on four promissory notes, originally held by a local bank and assigned to the respondent. The appellant corporation was charged, however, on only three of them, and as an endorser. There was a judgment by default against the maker and endorsers, including the appellant, but as to the appellant, the default was opened to permit a trial on the merits, which trial resulted in a verdict for the plaintiff-respondent. The application for a nonsuit was based on the following grounds: first, that the appellant was charged as an endorser, that the endorsement was an accommodation endorsement, and that there was no proof of any corporate action authorizing the action of the signing of the endorsement appearing on the note; secondly, that the president signed the note (evidently meaning the endorsement) and had no power to sign, and a note cannot be signed by a president of a corporation, especially an accommodation note, especially an accommodation endorsement (we follow the language of the printed case); third, that it appeared from the examination of the note itself (just which of the three notes is intended does not appear) that it was not signed by the president, but is alleged to have been signed by Myra R. Grubb as attorney in fact for the president, and that the president, even if he had authority to sign the note, cannot delegate that authority to some one else; fourth, that there was no proof of any kind offered to show that Myra R. Grubb was an attorney in fact either for the corporation or for the president.

The case is submitted on briefs, and while these four points are stated, none of them is separately argued, and the brief concludes that the motion for nonsuit should have been granted for three reasons, the first, because the contract was not authorized by the corporation or executed by a duly authorized agent; second, that the president did not have the power to endorse these notes for accommodation and, if he had, he could not have delegated that power to some one else; third, that the endorsements by Mrs. Grubb were isolated transactions not in the ordinary course of business, no rights of third parties intervened, and there is no proof of ratification by the corporation.

The motion to nonsuit was directed to the whole case resting on three separate notes, and not specifically directed to any particular note or notes, hence, if there was a case for the jury with respect to any one of the three notes, it was not error for the court to deny the motion to nonsuit. We conclude that with respect to one of these notes there was a case for the jury, whatever may be said with respect to the other two.

The general situation, as the jury was entitled to find it, was as follows:

The Beakley Corporation was substantially organized and conducted as a land company. Isaac E. Beakley was the president and one of the directors. The other directors were Olive Marsh, a daughter of Isaac E. Beakley, Marvin Beakley, his son, and Myra R. Grubb, his secretary, who was also secretary of the corporation and who testified in the case. According to the testimony, the corporation had no bank account. The evidence indicates that the notes in suit were renewals of former notes that had been carried for a considerable time, but without the endorsement of the corporation itself; that later the bank, as a condition of renewal, required the endorsement of the corporation, and in 1934 asked for a statement of the condition of the corporation, which statement was produced and put in evidence listing over twenty properties at a valuation of $130,700 with total mortgage encumbrance of $22,500. This statement was signed "Beakley Corporation Isaac E. Beakley, Pres." Under the heading of liabilities the statement shows the mortgages as above and an item of "notes payable to banks $1,730," and it is admitted in the brief of appellant that "the item of $1,730 undoubtedly refers to *Exhibit P-2* but the item of $5,097 cannot be identified with any of the notes in this case." The latter part of the sentence refers to a sentence under the heading of "liabilities" in the statement which reads as follows: "I have endorsed notes for others amounting to $5,097." *Exhibit P-2* is the note of $1,730 dated November 8th, 1937, signed "Isaac E. Beakley Myra R. Grubb, atty." and endorsed "Isaac E. Beakley Myra R. Grubb, Atty. Beakley Corporation Isaac E. Beakley, Pres. Myra R. Grubb, Atty." There was

evidence that the statement to the bank was signed by Isaac E. Beakley, so that this was for the jury, and in the deposition of Isaac E. Beakley, which was admitted in evidence by consent, he testified as follows: "Q. The note of $1,730 made by Isaac E. Beakley by Myra Grubb, Attorney, and endorsed by Isaac E. Beakley and then by the Corporation by Myra Grubb, attorney, what was that money borrowed for? A. Of that $250 was borrowed by Gus Nave on which I was an endorser. The $1,500, I suppose, was used by me for general purposes on the farm. We can go back and get the checks and see what it was checked out for. I have all the checks for Isaac E. Beakley."

The testimony is confusing and somewhat contradictory but, notwithstanding the denials therein that the proceeds of the $1,730 note, or any other note, were used for the purposes of the corporation, there was still enough to justify the jury in inferring that, after all, the Beakley Corporation, so far as doing business was concerned, was merely a nominal one and that it held the title to these twenty-odd tracts of land as a mere convenience to the directors and stockholders consisting of Beakley and his children and Mrs. Grubb, his secretary; that Isaac E. Beakley was essentially the whole corporation, though not the principal stockholder of record; that Mrs. Grubb habitually signed and endorsed notes both in his name and that of the corporation under his direction, and that in particular the endorsement of the $1,730 note was signed by Mrs. Grubb in the name of Beakley and in the name of the corporation at the instance of Isaac E. Beakley, who was president and soul of the corporation. It is familiar law that "when, in the usual course of the business of a corporation, an officer has been allowed to manage its affairs, his authority to represent the corporation may be implied from the manner in which he has been permitted by the directors to transact its business." *Fifth Ward Savings Bank* v. *First National Bank,* 48 *N. J. L.* 513 (at *p.* 527). For the proposition that Mrs. Grubb had authority to endorse for Beakley himself there was ample proof. The difficulty, if any, relates to the fact of Mrs. Grubb signing an endorsement in the name of the corporation by Beakley as president. But if the jury

were entitled on the evidence to find that Beakley as president was entitled to bind the corporation by his signature to an endorsement on a note, we think it follows that if Beakley, instead of writing that endorsement himself, directed Mrs. Grubb to write it for him, it was in legal effect as much his signature as president as if he had written it himself. Counsel for respondent cites, and we think properly the statute *R. S.* 7:2-19 which reads: "The signature of any party may be made by a duly authorized agent; no particular form of appointment is necessary for this purpose; and the authority of the agent may be established as in other cases of agency."

We deem it unnecessary to go into detail with regard to matters of consideration and the like. The only question before us is the question whether the court erred in refusing to take from the jury the question of recovery on any one of the notes by awarding a general nonsuit. Our view is to the contrary and it follows that the judgment under review will be affirmed.

*For affirmance*—PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—THE CHIEF JUSTICE. 1.