160 N.J. Super. 244 (1978)
389 A.2d 515
UNITED COUNTIES TRUST COMPANY, PLAINTIFF,
v.
ROBERT L. PODVEY ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 8, 1978.
*246 Mr. Anthony J. LaRusso for plaintiff (Messrs. Lindabury, McCormick & Estabrook, attorneys).
*247 Mr. Richard D. Catenacci for defendants (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
McKENZIE, J.S.C.
In September 1974 defendants formed a partnership for the practice of the law. To obtain working capital they borrowed the sum of $25,000 from the Springfield State Bank, plaintiff's predecessor, on an unsecured note. The note, dated December 20, 1974, became due March 20, 1975. It was executed by all three partners with the name of the borrower designated as "Podvey, Sachs and Witherington." The partnership dissolved as of February 11, 1975.
A new note dated March 20, 1975 was signed by all three defendants. Subsequent notes for the same debt were signed only by defendant C. David Witherington. The principal issue is whether the note dated September 19, 1975 binds defendants Podvey and Sachs, judgment having previously been entered against defendant Witherington.
Upon the dissolution of their partnership, Podvey and Sachs agreed to assume a loan to the partnership from Peoples Trust Co. in the principal sum of $50,000. Witherington, who had been a customer of Springfield State Bank before the partnership was formed and who had other business with that bank, agreed to assume the loan in question. As to these loans, the parties agreed:
In the event that the parties cannot pay the notes when due, and it becomes necessary to seek extensions for payment, Robert L. Podvey and Franklin M. Sachs agree to use their best efforts to have C. David Witherington removed as a consigner, co-maker, guarantor or endorser of the note due to Peoples Trust. C. David Witherington agrees to use his best efforts to have Robert L. Podvey and Franklin M. Sachs removed as cosignors, co-makers, guarantors or endorsers of the note due Springfield State Bank. Robert L. Podvey and Franklin M. Sachs agree to hold C. David Witherington harmless and indemnify him from any claims of Peoples Trust of New Jersey with regard to said note. Said indemnification shall include the payment of reasonable attorneys' fees. C. David Witherington agrees to hold Robert L. Podvey and Franklin M. Sachs harmless and indemnify *248 them from any claims of Springfield State Bank with regard to the said note. Said indemnification shall include the payment of reasonable attorneys' fees. In the event the removal of the respective parties as co-signers, co-makers, guarantors or endorsers cannot be obtained * * * from the respective banks, the parties agree with each other to sign renewal notes when requested by the banks. Such signatures will not, however, affect the indemnification as set forth above.
Defendants take the position that with the dissolution of the partnership on February 11, 1975 the partnership could not be bound thereafter by subsequent renewal notes signed by only one of the former partners.
N.J.S.A. 42:1-30 of our Uniform Partnership Act provides:
On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.
N.J.S.A. 42:1-35 provides:
After dissolution a partner can bind the partnership * * * [By] any act appropriate for winding up partnership affairs or completing transactions unfinished at dissolution;
N.J.S.A. 42:1-36 provides:
1. The dissolution of a partnership does not of itself discharge the existing liability of any partner.
2. A partner is discharged from any existing liability upon dissolution of the partnership by an agreement to that effect between himself, the partnership creditor and the person or partnership continuing the business; and such agreement may be inferred from the course of dealing between the creditor having knowledge of the dissolution and the person or partnership continuing the business.
To similar effect is our Uniform Commercial Code. N.J.S.A. 12A:3-601 provides:
* * * * * * * *
2. Any party is also discharged from his liability on an instrument to another party by any other act or agreement with such *249 party would discharge his simple contract for the payment of money.
Plaintiff does not claim the status of a holder in due course. See N.J.S.A. 12A:3-602.
There appears to be no case decided in New Jersey under these statutes construing their application in factual circumstances similar to those involved in the present case. However, construing these statutes in pari materia, it is clear that absent an agreement with the partnership creditor discharging one or more of the parties from liability on the paper, a party is authorized in behalf of himself and former partners to execute a renewal note for a partnership debt to obtain additional time in which to satisfy the obligation. This is in accord with the general rule that the dissolution of a partnership operates only with respect to future transactions, and the partnership therefore continues as to all present existing matters until they are terminated. See Scaglione v. St. Paul-Mercury Indemnity Co., 28 N.J. 88 (1958).
Aside from the authorization to execute the renewal notes in behalf of the partnership inherent in the statutes, the parties impliedly authorized each other to sign such notes by the terms of their dissolution agreement. Witherington's agreement to "use his best efforts" to have Podvey and Sachs removed from the Springfield State Bank obligation and to indemnify them from any claims of that bank on that note, and the agreement of the parties to sign renewal notes "when requested" by the bank, patently demonstrate an understanding by Podvey and Sachs of the possible necessity of the note being renewed, with them still liable as principals. Thus if Witherington's "best efforts" were fruitless, they would remain responsible on the note and any renewal thereof, and in addition would personally sign the note if required by the bank. Contrary to the position urged by defendants, the assumption of the ultimate responsibility for the loan by Witherington, although known to the bank, did *250 not and could not in itself discharge Podvey and Sachs from the loan or any renewal of the same signed by Witherington in behalf of all.
Defendants urge that nevertheless they are discharged from liability because of events subsequent to the dissolution of the partnership.
Witherington testified that following the dissolution he conferred with Donald Spears, president of the Springfield State Bank, and advised him Witherington was to assume the obligation in question. Since Witherington was not in a position to pay it when due in March 1975, a renewal note in the name of the firm was forwarded by the bank to Witherington for execution. Witherington signed the note, striking out the words "Podvey, Sachs and" in the designation of "Podvey, Sachs and Witherington" as the borrower and returned it to the bank.[1] Spears called Witherington and after it was again explained that Witherington was assuming this obligation, Spears requested that on this one renewal Podvey and Sachs also sign as comakers, after which their signatures would no longer be required on any renewal notes. Podvey and Sachs were informed by Witherington of this conversation. They agreed and signed the note in blank, except for the insertion of the principal balance figure of $20,000. The note was thereafter filled in by the bank, setting forth the "finance charge," the date of March 20, 1975, the interest rate and the loan period as three months (although Spears had told Witherington the term would be one month). The firm name "Podvey, Sachs & Witherington" appears in the upper left hand corner of the note but not on the line at the foot of the note designated "borrower's name."
*251 The court is satisfied that the use of the firm's name on this and subsequent notes is merely a reference to the title of the original loan, typed in by a secretary after execution in conformity with the bank index card, and does not contradict Witherington's testimony that the intention of all parties was that he was now the borrower and Podvey and Sachs were accommodation co-makers on this particular note.
Spears did not testify. It was represented that he is presently incarcerated in a federal prison as a result of a conviction on charges arising from his tenure as president of the bank. The witnesses produced by plaintiff, while credible, were unable to refute from their own knowledge the claim of the defendants that Spears had agreed to release Podvey and Sachs from the obligation.
Their testimony as to the usual procedures followed in the note department is not persuasive in view of the strong evidence that as to this and other loans normal procedures were not followed.
Plaintiff maintains that Spears was without authority to release Podvey and Sachs from the obligation to the bank. Aside from any authority virtute officii arising from his position as president of the bank (see Elblum Holding Corp. v. Mintz, 120 N.J.L. 604 (Sup. Ct. 1938) and cases cited therein; see also, Gardner v. The Calvert, 253 F.2d 395 (3 Cir.1958), cert. den. 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958)) it is clear from the evidence, including the testimony of former employees of the Springfield State Bank, now employed by plaintiff and produced by plaintiff as witnesses, that Spears was given a free reign in the operations of the bank and, specifically, the loan department. If as seems evident he had the authority to determine whether a note could be renewed, and if so fix the terms of the note including the interest rate and due date in negotiating those terms he had at least the apparent authority to release co-obligors therefrom. Defendants Podvey and Sachs were entitled to rely upon this apparent *252 authority in assuming that their responsibility to the bank became limited to their liability under the note date, March 20, 1975. See Federal Deposit Ins. Corp. v. Beakley Corp., 124 N.J.L. 445 (E. & A. 1940). Subsequent renewal notes, signed by Witherington alone, without their knowledge, could not bind Podvey and Sachs, nor could the bank in completing the notes make them liable by the unauthorized addition of their names. N.J.S.A. 12A:3-115.
Plaintiff further urges lack of consideration for any release of Podvey and Sachs. Aside from an extension of interest payments at the rate of 10 1/2% per annum, together with retention of the good will of their customer, Witherington, beneficial to the bank, the position of Podvey and Sachs was on the other hand prejudiced. Had they not been promised their release from the obligation they would have been in a position as of March 20, 1975 to enforce against Witherington his hold harmless agreement. At that time funds and assets of Witherington were available which were not when Witherington ultimately defaulted on the obligation. Such forbearance is a detriment to the promisee and thus valid consideration for the promised release. See Verdi v. Jefferson Trust Co., 123 N.J. Eq. 446 (Ch. 1938).
Plaintiff urges that the records of the bank do not indicate at any point a release of Podvey and Sachs from this obligation. While no direct notation to this effect appears, nevertheless as of April 3, 1975 the bank records show that it accepted a note signed by the three individuals, dated March 20, 1975, in lieu of a previous form of note bearing the same date and indicating an obligation of the firm. The latter was returned marked "cancelled" with the additional notation, "replaced by a New Note 4/3/75." It is to be noted that the loan department employees conceded in their procedures these notations were unusual. The obligation of the dissolved partnership thus was replaced by the obligation of the three defendants, with the agreement that the obligation of Podvey and Sachs would be circumscribed by the *253 terms of the new note. The note on which plaintiff brings suit, dated September 19, 1975, is therefore not enforceable against Podvey and Sachs.
Even absent an agreement to release Podvey and Sachs, their liability to plaintiff was nevertheless discharged. As a general rule, the acceptance of a renewal note does not discharge the original obligation. 10 C.J.S. Bills and Notes § 279 at p. 770. But the Uniform Partnership Law provides:
Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership, who, knowing of the agreement, consents to a material alteration in the nature of time or payment of such obligation. [N.J.S.A. 42:1-36(3)]
The Uniform Commercial Code provides:
1. The holder discharges any party to the instrument to the extent that without such party's consent the holder
(a) without express reservation of rights releases or agrees not to sue any person against whom the party has the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person * * *. [N.J.S.A. 12A:3-606]
The note contains no reservation of right by the holder to extend the due date. The Springfield Bank knew of the dissolution of the partnership before March 20, 1975 and also knew that as between the former partners, Witherington was assuming the payment of this obligation, and agreeing to indemnify Podvey and Sachs for any liability thereunder. Accepting plaintiff's position that the second note dated March 20, 1975 was a partnership obligation, and putting aside defendants' claim that the bank was only authorized to insert the term of the note as 30 days rather than the three months actually inserted, the acceptance by the bank of subsequent renewal notes without the knowledge and consent of Podvey and Sachs, even if executed by Witherington *254 purportedly in behalf of the partnership, would discharge Podvey and Sachs under the statute. Under the statute "any party to the instrument," and therefore a party primarily liable as well as one secondarily liable, is discharged under the foregoing circumstances. See Parnes v. Celia's, Inc., 99 N.J. Super. 179 (App. Div. 1968).
Judgment will be entered in favor of defendants Podvey and Sachs.
NOTES
[1] Apparently the relationship between Spears and Witherington was a personal one and they dealt directly and informally with each other. Witherington habitually signed in blank renewal notes for this and other obligations with the bank, forwarded the forms to Spears, who then filled in the figures and terms.