Sylvester W. Munn et al. *v.* Peter Scalera et al.

Cotter, C. J., Bogdanski, Peters, Healey and Parskey, Js.

Argued June 12—decision released July 15, 1980

*Edward W. Manasse,* with whom, on the brief, was *Paul F. Brown,* for the appellants (plaintiffs).

*Jeffrey B. Sienkiewicz,* for the appellee (named defendant).

Peters, J. This case arises out of the dissolution of a partnership and the subsequent assumption of a partnership obligation by one of the former part-

ners. The action was initiated by the plaintiffs, Sylvester W. Munn and Kathleen Munn, to recover damages for breach of a construction contract. The suit named as defendants Peter Scalera and Robert A. Scalera, d/b/a Constructors I. The defendant Peter Scalera filed special defenses alleging that he was discharged from his obligation under the construction contract because the plaintiffs, after having been notified of the dissolution of his partnership with his brother Robert, agreed that Robert alone would complete performance under the contract. Following a trial, the court, *Martin, J.,* found the issues for the plaintiffs as against the defendant Robert A. Scalera, but not as against the defendant Peter Scalera. Upon the rendering of a judgment in favor of Peter Scalera, the plaintiffs have appealed.

The parties disagree about the inferences to be drawn from their contractual relationships but not about the underlying facts themselves. The memorandum of decision, read together with the facts that are undisputed by the parties, discloses the following: The defendants Peter Scalera and Robert Scalera were doing business as a partnership known as Constructors I when they agreed, in 1972, to build a house for the plaintiffs. The project fell into default almost immediately. During the first half of 1973, having run into financial and other difficulties, the partners discussed dissolution of their partnership and phasing out of partnership business. Peter Scalera and Robert Scalera individually met with the plaintiffs to inform them that the brothers were no longer doing business as partners. Each of them offered to complete the construction contract individually, and the plaintiffs elected to have Robert do so.

Robert Scalera resumed construction of the plaintiffs' house in the late summer of 1973. A year later, the work was substantially completed, but there were sizable outstanding payments owed to a materialman, the Washington Supply Company. Eventually those obligations had to be met by the plaintiffs, and they incurred some other expenses as well in having the construction totally completed. These elements of damages to the plaintiffs led to the court's rendering of a judgment against Robert Scalera in the amount of $10,127. That judgment has not been appealed.

The trial court found that the defendant Peter Scalera was relieved of liability for the plaintiffs' construction project for two reasons, one arising out of the Uniform Partnership Act, especially General Statutes § 34-74 (3), the other arising out of the contract law of accord and satisfaction. Since we agree with the trial court that § 34-74 (3) is both applicable and dispositive, we need not and do not reach the trial court's alternate ground for decision.

Dissolution of partnerships is governed by a number of provisions in the Uniform Partnership Act, General Statutes §§ 34-39 et seq. Section 34-74, entitled Discharge From Partnership Liability, provides in subsection (1) that "dissolution of a partnership does not of itself discharge the existing liability of any partner." However, subsection (3) goes on to state: "Where a person agrees to assume the existing obligations of a dissolved partnership, the partners whose obligations have been assumed shall be discharged from any liability to any creditor of the partnership who, knowing of the agreement, consents to a material alteration in the nature or time of payment of such obligations." We have

not previously had the opportunity to interpret this section. Other courts, in their analysis of this language in the Uniform Partnership Act, have described the relationship of the assuming partner to the withdrawing partner as the relationship of principal to surety, and have bound creditors to knowledge of the legal consequences of such a relationship if they knew of the assumption agreement. See, e.g., *Stikeman* v. *Whitman, Requardt & Smith,* 272 App. Div. 627, 628, 75 N.Y.S.2d 73, appeal dismissed, 273 App. Div. 827, 76 N.Y.S.2d 537 (1947); *B-OK, Inc.* v. *Storey,* 79 Wash. 2d 387, 389, 485 P.2d 987 (1971); Crane & Bromberg, Partnership, pp. 451–53 (1968).

The plaintiffs raise three issues with regard to the applicability of § 34-74 (3). Did the trial court err in concluding that: (1) the partnership between Peter Scalera and Robert Scalera had been dissolved? (2) Robert Scalera had assumed the partnership obligation to complete the plaintiffs' construction project? and (3) there had been a material alteration in the nature or payment of the obligation owed to the plaintiffs?

The first two of these issues are easily resolved for they are essentially questions of fact on which the conclusions of the trial court, unless clearly erroneous; Practice Book, 1978, § 3060D; are not to be disturbed. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Whether the parties to a partnership dissolve their partnership, whether one of them assumes one or all of the partnership obligations, are matters of the intent of the parties. The evidence in the record amply supports the trial court's conclusions in its memorandum of decision that the

two brothers had determined to go separate ways, and that thereafter Robert Scalera alone intended to undertake the responsibility to complete the plaintiffs' construction project. "Intention is an inference of fact, and the conclusion is not reviewable unless it was one which the trier could not reasonably make." *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 653, 353 A.2d 714 (1974); *Bianco* v. *Darien,* 157 Conn. 548, 557, 254 A.2d 898 (1969); *Finlay* v. *Swirsky,* 98 Conn. 666, 671, 120 A. 561 (1923). Although the memorandum of decision does not fully spell out the basis of its findings, and further elaboration would have been helpful, the undisputed facts about the partners' conversations with each other and their lawyer, and with the plaintiffs, suffice to support the trial court's conclusions with regard to these two claims of error.

The third claim, concerning the applicability of § 34-74 (3) as a matter of law, raises a more serious issue. The language of § 34-74 (3) fits most aptly the situation in which (1) all of the obligations of the partnership are assumed by the remaining partner and (2) all of the assumed obligations are in the form of obligations to pay. In such circumstances, the statute discharges the withdrawing partner, as surety, whenever the creditor and the remaining partner, as principal, agree to a material variation in the assumed debts by an alteration in the nature or manner of payment of those debts. See Crane & Bromberg, Partnership, pp. 451–53 (1968). For example, extension in the time for payment by the issuance and acceptance of renewal notes in substitution for the original partnership obligations has been held to discharge the withdrawing partner. *Heller* v. *Mattar,* 135 F. Sup. 767, 775

(D. Ark. 1955); *Lenger* v. *Hulst,* 259 Mich. 640, 643, 244 N.W. 187, 188 (1932); *United Counties Trust Co.* v. *Podvey,* 160 N.J. Super. 244, 253–54, 389 A.2d 515 (1978). In our case, it is undisputed that the defendant Robert Scalera assumed only one of the various partnership obligations that were outstanding when Constructors I was dissolved, the obligation to construct the plaintiffs' house. That deviation from the normal pattern is of no significance. There is no discernible reason of policy to distinguish between the unitary assumption of all partnership obligations and the singular assumption of one partnership contract, so long as all the parties are fully and accurately informed of what has transpired.

The second aspect of the coverage of § 34-74 (3) is potentially more troublesome. The statute is not clear about the range of suretyship defenses which it incorporates, about the extent to which a material alteration in the assumed obligation may be a basis for discharge if the material alteration relates to some aspect of the assumed obligation other than its payment terms. See, e.g., *Nelson* v. *Century Indemnity Co.,* 65 F.2d 765 (9th Cir. 1933). In the case before us, the plaintiffs agreed to changes in the nature and time of payment *to* the defendant Robert Scalera, the remaining partner, rather than to changes in the nature and time of payment *by* these defendants. The plaintiffs agreed to underwrite the procurement of materials, by adding their own credit to that of Robert Scalera, when the partnership contract assigned this responsibility solely to the defendants. In effect, the plaintiffs overpaid and prepaid Robert Scalera by not insisting that he discharge the claims of these materialmen before he himself was paid in full. There can be no doubt

that the plaintiffs materially altered the partnership contract, and altered it in respect to its payment terms. We hold that this alteration fell within both the literal terms and the understood policy of § 34-74 (3), so as to afford a firm basis for the discharge of the defendant Peter Scalera.

There is no error.

In this opinion the other judges concurred.